IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

ABDULLAH MUHAMMAD,

    Plaintiff,

vs.

R. S. ORTIZ, et al.,

    Defendants.

_____/

CV F 04 5534 AWI WMW   P

ORDER RE MOTION FOR SUMMARY JUDGMENT (DOC 35 )

**BACKGROUND**

Plaintiff is a state prisoner proceeding pro se in a civil rights action against defendant correctional officials for indifference to his medical care in violation of the Eighth Amendment. This action proceeds on the original complaint filed on April 6, 2004. Plaintiff paid the filing fee in full. The complaint was served on defendants Neil Klarich, M.D., N. Kushner, M.D. and J. Neubarth, M.D.[1]

Plaintiff claims of inadequate medical care stem from a denial of his request to be treated with a particular medication for his Hepatitis C. Prior to his transfer to Pleasant Valley State

---

[1] Plaintiff also names defendant R.S. Ortiz, M.D., who has not responded to the complaint.

1

1  Prison, where the events complained of occurred, plaintiff was diagnosed with Hepatitis C.  In
2  his complaint, he alleges that he has not received any medication for his condition, and has not
3  received a liver biopsy.   Plaintiff alleges that defendants did not follow institutional guidelines in
4  regards to his treatment.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

1  satisfied." Id. at 323.

2  If the moving party meets its initial responsibility, the burden then shifts to the
3  opposing party to establish that a genuine issue as to any material fact actually does exist.
4  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of
5  Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607
6  F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

7  In attempting to establish the existence of this factual dispute, the opposing party may not
8  rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of
9  specific facts in the form of affidavits, and/or admissible discovery material, in support of its
10 contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank,
11 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must
12 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
13 suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
14 Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that
15 the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
16 the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d
17 1433, 1436 (9th Cir. 1987).

18 In the endeavor to establish the existence of a factual dispute, the opposing party need not
19 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
20 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
21 trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose
22 of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether
23 there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)
24 advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin
25 Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

26

1  In resolving the summary judgment motion, the court examines the pleadings,
2  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
3  any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th
4  Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and
5  all reasonable inferences that may be drawn from the facts placed before the court must be drawn
6  in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,
7  369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208
8  (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing
9  party's obligation to produce a factual predicate from which the inference may be drawn.
10 Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d
11 898, 902 (9th Cir. 1987).
12  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
13 show that there is some metaphysical doubt as to the material facts....  Where the record taken as
14 a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
15 issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### DISCUSSION

17  A prisoner's claim of inadequate medical care does not constitute cruel and unusual
18 punishment unless the mistreatment rises to the level of "deliberate indifference to serious
19 medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference"
20 standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in
21 objective terms, "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing
22 Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a
23 "sufficiently culpable state of mind," which entails more than mere negligence, but less than
24 conduct undertaken for the very purpose of causing harm.  Farmer v. Brennan, 511 U.S. at 837.
25 A prison official does not act in a deliberately indifferent manner unless the official "knows of

and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Although neither a physician's negligence nor a prisoner's disagreement with a particular course of treatment states a claim for deliberate indifference, a prison medical staff's acts or omissions will constitute deliberate indifference if staff members knew of and disregarded an excessive risk to an inmate's health. Farmer v. Brennan, 511 U.S. at 837. Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "interfere with treatment once prescribed." Estelle v. Gamble, 429 U.S. at 104-05. The Ninth Circuit has found deliberate indifference where prison officials "deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992)(reversing summary judgment where prison officials forced prisoner to endure a plane flight that resulted in ear injury, in direct contravention of a treating

physician's previous orders); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989)(per curium)(reversing summary judgment where medical staff knew that pretrial detainee had head injury, but prescribed contraindicated medications, disregarding evidence of complications to which they had been specifically alerted by private treating physician); Tolbert v. Eyman, 434 F.2d 625 (9th Cir. 1970)(finding cognizable claim for deliberate indifference where warden refused to authorize prisoner's receipt of medicine that had been previously prescribed by a physician); Cf. McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992)(where surgery recommended by prisoner's prior physician was severely delayed, court was unable hold doctors liable because prison administrators, not the doctors, were responsible for scheduling treatment).

In order to meet their burden on summary judgment, defendants must come forward with the lack of existence of a triable issue of fact - evidence that defendants were not deliberately indifferent to a serious medical need of plaintiff's.

Defendants' statement of undisputed facts follow:

1. Plaintiff was tested for the Hepatitis C virus (HCV) while he was incarcerated at the Sacramento County Jail in June 2001. Plaintiff tested positive for HCV. (Exhibit 1 – Deposition of Plaintiff, p. 22:5-14.)

2. Plaintiff was sent to Pleasant Valley State Prison in November 2002 to begin serving his prison term. (Exhibit 1 – Deposition of Plaintiff, p. 40:16-19.)

3. On December 2, 2002, Plaintiff saw Dr. Ortiz and demanded interferon injections for his HCV condition. Dr. Ortiz explained to Plaintiff the adverse side-effects produced by interferon. (Exhibit 1 – Deposition of Plaintiff, pp. 44:7-25, 45:1-6; Exhibit 3 – Plaintiff's administrative grievance (Form 602) filed on December 12, 2002, Log No. 03-00036, attached as Exhibit A to Plaintiff's deposition.)

1        4. Before March 2004, an inmate-patient with HCV was required to undergo a series
of blood/chemical analysis to determine whether he has elevated alanine transaminase (ALT) levels. Elevated ALT levels suggest unusual activities in the liver potentially indicative of liver disease and damage. If an inmate-patient has elevated ALT levels, he would then be offered a liver biopsy to determine the type and degree of HCV infection and liver damage. If the biopsy revealed a stage II or III fibrosis or greater, then the inmate-patient may be offered interferon treatment in combination with an antiviral medication such as ribavirin. Inmate-patients with mild chronic hepatitis who are at stage 0 or I are not provided interferon therapy, to prevent unnecessary exposure to the adverse side-effects of interferon. These inmate-patients are generally monitored by medical staff and a periodic liver biopsy may be recommended to determine where there is any liver damage or need for aggressive treatment. (Declaration of Dr. Kushner filed in Support of the Motion for Summary Judgment.)

      5. On December 12, 2002, Plaintiff filed his grievance against Dr. Ortiz asserting that he was entitled to immediate interferon injections. On December 16, 2002, in response to Plaintiff's grievance, the Medical Appeals Analyst advised him to return to the doctor's line for further consultation. Plaintiff appealed the decision to the first or formal level of review. (Exhibit 1 – Deposition of Plaintiff, pp. 47:21-25, 48:1-5; Exhibit 3 – Plaintiff's administrative grievance (Form 602) filed on December 12, 2002, Log No. 03-00036, attached as Exhibit A to Plaintiff's deposition.)

      6. On February 13, 2003, Dr. Kushner responded to Plaintiff's appeal at the first level of review. Dr. Kushner partially granted Plaintiff's appeal noting that he had been seen and laboratory tests had been ordered. Dr. Kushner, however, advised Plaintiff that in order to be considered for interferon treatment, Plaintiff's liver enzymes had to be elevated and he would

then undergo a liver biopsy. The biopsy would determine the need for treatment. Plaintiff was advised to return to the doctor's line for follow-up in two months time. (Exhibit 1 – Deposition of Plaintiff, pp. 52:2-25, 53:1-14, 56:3-3-24; Exhibit 3 – Plaintiff's administrative grievance (Form 602) filed on December 12, 2002, Log No. 03-00036, attached as Exhibit A to Plaintiff's deposition; Declaration of Dr. Kushner filed in Support of the Motion for Summary Judgment.)

7. Plaintiff acknowledged that Dr. Kushner's medical opinion was based on his care and concern for Plaintiff and not for any personal or non-medical reason or opinion regarding Plaintiff or inmates in general. (Exhibit 1 – Deposition of Plaintiff, pp. 56:25, 57:1-8.)

8. Plaintiff admitted that Dr. Kushner fully informed Plaintiff of the risk and adverse effects of interferon. (Exhibit 1 – Deposition of Plaintiff, pp. 57:9-25, 58:1-9.)

9. Plaintiff disagreed with Dr. Kushner's medical opinion regarding the need for diagnostic testing before determining whether Plaintiff was a suitable candidate for interferon therapy. Plaintiff appealed his grievance to the second level of review. (Exhibit 1 – Deposition of Plaintiff, p. 53:15-25; Exhibit 3 – Plaintiff's administrative grievance (Form 602) filed on December 12, 2002, Log No. 03-00036, attached as Exhibit A to Plaintiff's deposition.)

10. Dr. Neubarth denied Plaintiff's grievance at the second level of review and recommended that Plaintiff return to the doctor's line to fill out the necessary forms for liver biopsy if the treatment is appropriate. Dr. Klarich reviewed and approved Dr. Neubarth's decision. (Exhibit 1 – Deposition of Plaintiff, pp. 61:17-25, 62:1-19; Exhibit 3 – Plaintiff's administrative grievance (Form 602) filed on December 12, 2002, Log No. 03-00036, attached as Exhibit A to Plaintiff's deposition.)

11. Plaintiff appealed his grievance to the Director's level of review. Plaintiff's appeal was denied on the basis that Plaintiff received appropriate access to medical care and his concerns had been adequately addressed by the physicians and medical staff who treated him. The decision further noted that it was not appropriate for Plaintiff to self-diagnose his condition and treatment and expect medical staff to carry out his plans. (Exhibit 1 – Deposition of Plaintiff, pp. 63:17-25, 64:1-25; Exhibit 3 – Plaintiff's administrative grievance (Form 602) filed on December 12, 2002, Log No. 03-00036, attached as Exhibit A to Plaintiff's deposition.)

12. Plaintiff was seen on multiple occasions by CDC physicians between April 17, 2003 and May 2004 concerning his HCV condition and complaints. A series of laboratory tests were conducted during this period to measure Plaintiff's ALT levels, which were consistently within the normal range. (Declaration of Dr. Kushner filed in Support of the Motion for Summary Judgment and the exhibits attached thereto.)

13. On May 12, 2004, Dr. Neubarth signed an order for Plaintiff to undergo a liver biopsy. (Exhibit 1 – Deposition of Plaintiff, pp. 98:10-25, 99:1-25.)

14. In March 2004, CDC Health Care Services Division instituted new guidelines on diagnosing and treating Hepatitis C inmate-patients. Before March 2004, an inmate-patient had to have elevated ALT levels in order to qualify for a liver biopsy. The new guidelines permit any inmate-patient over 45 years of age who has Hepatitis C to undergo a liver biopsy. (Declaration of Dr. Kushner filed in Support of the Motion for Summary Judgment and Exhibit G attached thereto.)

15. Plaintiff underwent a liver biopsy on June 25, 2004. The biopsy results were: (1)

consistent with mild chronic hepatitis; (2) inflammation grade 1, fibrosis stage 0; (2) no evidence of malignancy; and (4) no evidence of increased liver storage iron. The examining physician further commented that "[t]here is minimal deviation with respect to normal. This consists of slight expansion of the portal plates by lymphoid nodules. A few lymphocytes percolate into the hepatocellular parenchyma with foci of hepatocytolysis. There is no significant fibrosis. There is no frank cirrhosis." (Exhibit 1 – Deposition of Plaintiff, pp. 101:10-25, 102:1-21; Declaration of Dr. Kushner filed in Support of the Motion for Summary Judgment and Exhibit I attached thereto.)

16. Plaintiff's mild chronic Hepatitis C condition with minimal inflammation and no evidence of fibrosis did not justify interferon therapy. (Declaration of Dr. Kushner filed in Support of the Motion for Summary Judgment.)

17. Plaintiff believes that he is entitled to interferon treatment simply because he has HCV. (Exhibit 1 – Deposition of Plaintiff, pp. 120:15-25, 121:1-19.)

18. Plaintiff relied on a newspaper article authored by Linda A. Johnson of the Associated Press, appearing in the Sacramento Bee on September 26, 2002, for the proposition that pegylated interferon is an effective medication for the treatment of patients with HCV, and that he is entitled to it. (Exhibit 1 – Deposition of Plaintiff, pp. 59:14-25, 60:1-25, 61:1-15; Exhibit 4 – Newspaper article authored by Linda A. Johnson, Associated Press, appearing in the September 26, 2002 edition of the Sacramento Bee as attached to Plaintiff's deposition as Exhibit B.)

19. Plaintiff contends that CDC has some unwritten policy against providing inmates

with the best medication available to the public and, instead, only provides inmates with inferior quality medications. (Exhibit 1 – Deposition of Plaintiff, pp. 58:11-25, 118:4-21, 125:11-17.)

20. Plaintiff contends that Defendants' denial of interferon therapy to Plaintiff was not motivated by any personal reason, animosity, or dislike for Plaintiff. Instead, they are limited by CDC's alleged policy of providing inferior medication in what they are able to provide inmate-patients. (Exhibit 1 – Deposition of Plaintiff, p. 118:4-21.)

21. Plaintiff contends that California Code of Regulations, Title 15, § 3354.2, requires CDC to provide inmate-patients who have communicable or contagious diseases with the treatment of their choice. (Exhibit 1 – Deposition of Plaintiff, p. 96:13-21.)

22. Plaintiff filed a grievance against Dr. Kushner for refusing to grant him single cell status. (Exhibit 1 – Deposition of Plaintiff, p. 78:4-13; Exhibit 5 – Plaintiff's administrative grievance (Form 602) filed on March 12, 2003, Log No. 03-00696, attached as Exhibit C to Plaintiff's deposition.)

23. Plaintiff's grievance for a single-cell status was premised on his desire not to infect other inmates. (Exhibit 1 – Deposition of Plaintiff, p. 78:14-19; Exhibit 5 – Plaintiff's administrative grievance (Form 602) filed on March 12, 2003, Log No. 03-00696, attached as Exhibit C to Plaintiff's deposition.)

24. Dr. Kushner denied Plaintiff's request for a single-cell status on the basis that it was not medically necessary. Dr. Kushner explained to Plaintiff that HCV does not exist outside of the body for any appreciable period and it is only transmitted through open wounds. (Exhibit 1 –

Deposition of Plaintiff, pp. 85:14-25, 86:1-4; Exhibit 5 – Plaintiff's administrative grievance (Form 602) filed on March 12, 2003, Log No. 03-00696, attached as Exhibit C to Plaintiff's deposition.)

25.  Plaintiff appealed Dr. Kushner's decision to the first level of appeal. Plaintiff's appeal was denied at the first level with the explanation that HCV is only contagious during the acute stage of infection and that infection from persons with chronic HCV can only occur through blood transfusion, sharing needle, or shaving devices. (Exhibit 1 – Deposition of Plaintiff, p. 86:5-25; Exhibit 5 – Plaintiff's administrative grievance (Form 602) filed on March 12, 2003, Log No. 03-00696, attached as Exhibit C to Plaintiff's deposition.)

26.  Plaintiff admitted that he does not share his needles or shaving devices, and that he regularly cleans up any incidental blood spill that may be on the sink or surfaces of his cell. (Exhibit 1 – Deposition of Plaintiff, p. 87:1-13; Exhibit 5 – Plaintiff's administrative grievance (Form 602) filed on March 12, 2003, Log No. 03-00696, attached as Exhibit C to Plaintiff's deposition.)

27.  Plaintiff filed an appeal concerning his request for single-cell status to the second level of appeal and, finally, the Director's level of appeal. On October 30, 2003, Plaintiff's appeal was denied at the Director's level on the basis that there was no medical necessity for single-cell status. (Exhibit 1 – Deposition of Plaintiff, pp. 87:14-25, 88:5-24; Exhibit 5 – Plaintiff's administrative grievance (Form 602) filed on March 12, 2003, Log No. 03-00696, attached as Exhibit C to Plaintiff's deposition.)

28.  Plaintiff disagreed with Defendants' medical opinion regarding the care and

treatment of Plaintiff's HCV condition. (Exhibit 1 – Deposition of Plaintiff, pp. 93:2-25, 94:1-7.)

29. Plaintiff acknowledged that each Defendant fully explained the risks and serious side-affects associated with interferon and how it would be imprudent to prescribe interferon to Plaintiff without confirming the severity of his HCV condition. (Exhibit 1 – Deposition of Plaintiff, pp. 94:14-25, 95:1, 118:4-21.)

30. Plaintiff's claim against Defendant Klarich stems solely from his participation and denial of Plaintiff's administrative grievances filed against Drs. Ortiz and Kushner. (Exhibit 1 – Deposition of Plaintiff, pp. 89:14-19.)

In order to meet their burden on summary judgment, defendants must come forward with evidence that establishes the lack of existence of a triable issue of fact - evidence that defendants were not deliberately indifferent to a serious medical need of plaintiff's.  Specifically, defendants must come forward with evidence that they did not deny plaintiff treatment for his Hepatitis C, knowing that such treatment was medically appropriate.   The gravamen of plaintiff's complaint is that, in his view, he is entitled to a specific treatment for his condition.  Defendants argue that the treatment requested by plaintiff, interferon injections, were medically inappropriate and could indeed cause further harm to plaintiff.

Defendants support their motion with the declaration of Neil Kushner, M.D.  Dr. Kushner's declaration follows generally the factual time line set forth by plaintiff in his deposition.   Plaintiff was diagnosed with Hepatitis C before his commitment to Pleasant Valley. Plaintiff was seen by Dr. Ortiz regarding his condition.   Dr. Ortiz ordered lab tests to determine whether plaintiff was medically eligible for interferon treatment.   (Exhibit A to Kushner Decl; Pltf.'s Depo. 41:17).

Plaintiff filed a grievance, seeking interferon treatment.  Dr. Kushner granted plaintiff's

13

appeal to the extent that he had already seen a physician and because certain laboratory tests were already ordered. Plaintiff's request for interferon treatment was denied on the ground that plaintiff had not completed the necessary laboratory tests to determine whether he had elevated enzymes to justify a liver biopsy. Plaintiff was told that if he had elevated livery enzymes, a biopsy would be performed, which would determine the proper course of treatment for him.

Dr. Kushner further declares that:

> A review of Plaintiff's medical file shows that Plaintiff was subsequently seen on April 17, 2003 where his laboratory results revealed that Plaintiff's alanine transaminase (ALT), a liver-based enzyme, was within the normal range, eliminating him as a candidate for liver biopsy. (A true and correct copy of the Physician's Progress Notes dated 4/17/03 is attached hereto as Exhibit "B".)
>
> A review of Plaintiff's medical file shows that on June 5, 2003, Plaintiff again requested a liver biopsy, but was told that his ALT level was within normal limits, precluding him from having a liver biopsy. (A true and correct copy of the Physician's Progress Notes dated 6/5/03 is attached hereto as Exhibit "C".)
>
> A review of Plaintiff's medical file shows that he was seen on December 10, 2003 and was advised that his ALT level was still within normal limits and therefore he did not meet the criteria for HCV treatment. (A true and correct copy of the Physician's Progress Notes dated 12/10/03 is attached hereto as Exhibit "D".)
>
> A review of Plaintiff's medical file shows that he was seen on January 12, 2004 by Dr. Neubarth who advised Plaintiff of the risk and benefits of interferon/ribaviron treatment. Specifically, Plaintiff was counseled that the risks of the treatment included death, depression and possible permanent damage to the blood cells, thyroid, pancreas and eyes. (A true and correct copy of the Physician's Progress Notes dated 1/12/04 is attached hereto as Exhibit "E".)
>
> A review of Plaintiff's medical file shows that he was seen on March 29, 2004 by Dr. Neubarth who explained to Plaintiff that he must have elevated ALT levels before a liver biopsy and possible treatment for HCV infection could be started. (A true and correct copy of the Physician's Progress Notes dated 3/29/04 is attached hereto as Exhibit "F".)
>
> In March 2004, CDC Health Care Services Division instituted new guidelines on diagnosing and treating Hepatitis C patients. The

new guidelines allow for a liver biopsy for any Hepatitis C patient over 45 years of age, regardless of their ALT levels. (A true and correct copy of the new guidelines are attached hereto as Exhibit "G".)

A review of Plaintiff's medical file shows that on May 4, 2004, Dr. Neubarth ordered a liver biopsy consult for Plaintiff. (A true and correct copy of the Physician's Progress Notes dated 5/4/04 is attached hereto as Exhibit "H".)

A review of Plaintiff's medical file shows that on June 25, 2004, Plaintiff underwent a liver biopsy procedure at Bakersfield Pathology Medical Group. The liver biopsy result was consistent with mild chronic hepatitis, inflammation grade 1, fibrosis stage 0, no evidence of malignancy, and no evidence of increased liver storage iron. (A true and correct copy of the biopsy report is attached hereto as Exhibit "I".)

Based on the biopsy result, Plaintiff is not medically eligible for interferon therapy pursuant to CDC's Health Care Services Hepatitis C Clinical Management Program.   Only inmate-patients with liver biopsy results consistent with Stage 2-3 fibrosis and who otherwise meet inclusion criteria will be offered combination therapy, which includes pegylated interferon and ribavirin medication.

Kushner Decl.; ¶¶ 10-18.

In his deposition, plaintiff concedes that the decision to deny his request for interferon treatment was based upon medical reasoning, and not a deliberate disregard of a need for it.

Q. Okay.  Now, do you have – the way I've seen the responses so far, okay, it seems like they're saying that, look, Mr. Muhammad, you don't – you're not medically eligible or qualify yet for the – at the time of the response for the liver biopsy and presently for the Interferon treatment, okay.  Do you have any reason to believe that their opinion is not based on medical reasons but for some other reason?  Do you think they have anything personally against you?

A. No.

Q. As an individual?

A. No.

Q. Okay.  They haven't said anything malicious or anything mean to you?

A. No.

15

1
2
        Q. Okay. And when you do to see them for medical concerns or whatnot, they do sit down and meet with you, correct?

3
        A. Yes.

4
        Q. And they talk to you about your health concerns, correct?

5
        A. Yes.

6
        Q. And they do explain, whatever – if it's diabetes concerns, they explain to you what medication you need to take and they do prescribe you medication, don't they?

7
8
        A. Yes.

9
        Q. Okay, so in essence you have received medical treatment, just not the treatment you want, correct?

10
        A. Yes.

11
    Deposition of plaintiff, (3:2 - 94:3).

12
    Plaintiff specifically concedes that defendants were concerned with his health and safety,

13
and that defendants' concern in denying the medication was his safety.

14
        Q. Okay, let me ask you this: So essence the individual defendants you have named in this lawsuit, the reason you believe they have not given you Interferon treatment is because the drug that's available to them to use on you would pose a danger to you and so they feel like they can't give it to you; is that right?

15
16
17
        A. Yes.

18
        Q. They're concerned for your safety in that sense, they don't want to expose you to this Interferon drug that might cause you ill effects, correct?

19
20
        A. Correct.

21
        Q. It's not because they dislike you individually or they're doing it to be mean to you or something like that, am I right? It's just that their hands are tied by what CDC has made available to them?

22
23
        A. Yes, in some respects, that's what they are saying.

24
Id., 118:4-21.

25
    The court finds that defendants have met their burden on summary judgment.

26

Defendants' evidence clearly establishes that the decision to deny interferon treatment was based upon established medical standards at the time.  Though plaintiff was initially denied a liver biopsy, Dr. Kushner declares that the new guidelines, established in March of 2004, allowed for a liver biopsy for any patient over 45, regardless of enzyme levels.  The evidence submitted by defendants establishes the lack of existence of a triable issue of fact - evidence that defendants knew of and disregarded a serious risk to plaintiff's health or safety.   The evidence indicates that the decision at issue was made in the best interests of plaintiff's health.   The burden shifts to plaintiff to come forward with evidence that establishes a triable issue of fact - evidence that defendants knew of and disregarded a serious risk to plaintiff's health or safety.

In his opposition, plaintiff continues to assert that he informed defendants that he needed interferon treatment, and that such treatment was medically appropriate.  In support of his motion, plaintiff submits various media accounts regarding the level of medical care in general in California prisons.  Plaintiff also requests the court to take judicial notice of an order entered in the Northern District of California by U.S. District Judge Thelton Henderson.  That order relates to litigation regarding medical care in California Prisons in general.  Nothing in plaintiff's opposition, however, establishes a triable issue of fact.  Plaintiff's opinion notwithstanding, plaintiff has not come forward with evidence that any of the defendants knew that interferon was indicated, or that plaintiff was a candidate for interferon treatment.

Plaintiff also contends that defendants were in violation of prison regulations when they denied interferon treatment for plaintiff.  The regulation at issue provides that only certain officials may prescribe medication or treatment for inmates. California Code of Regulations, Title 15, § 3354.  Assuming, *arguendo*, that defendants were in violation of some regulatory provision, such a violation, of itself, does not give rise to a violation of the Eighth Amendment. Plaintiff must come forward with evidence that establishes a triable issue of fact - evidence that defendants knew of and disregarded a serious risk to plaintiff's health.   Though plaintiff clearly

articulates his disagreement with his course of treatment, such a disagreement does not give rise to a Constitutional violation.  Plaintiff cannot prevail in a section 1983 action where only the quality of treatment is subject to dispute.  <u>Sanchez v. Vild</u>, 891 F.2d 240 (9th Cir. 1989).  Mere difference of opinion between a prisoner and prison medical staff as to appropriate medical care does not give rise to a section 1983 claim.  <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).

Plaintiff also contends that his denial of single cell status is a Constitutional violation.  Specifically, plaintiff sought single cell status based upon the possibility that he could transmit HCV to his cellmate.   Defendants' evidence indicates that the request was denied on the ground that HCV is not transmittable to other inmates, so long as plaintiff takes reasonable precautions.  Deposition of Plaintiff, pp. 85:14-25, 86:1-4.  Plaintiff offers no evidence as to how such a decision subjects him to deliberate indifference.

As to Dr. Ortiz, plaintiff names Dr. Ortiz as a defendant.  Dr. Ortiz has not responded to the complaint, and does not join in this motion[2].  The only allegations regarding Dr. Ortiz are that he examined plaintiff, and denied plaintiff's request for interferon treatment.  Because there is no evidence that such a decision, in plaintiff's case, constitutes deliberate indifference, Dr. Ortiz can not be held liable.  Plaintiff does not allege any facts indicating that Dr. Ortiz knew of a particular harm to plaintiff, and acted with deliberate indifference to such knowledge.  As noted, that plaintiff disagrees with a course of treatment does not constitute an Eighth Amendment violation.  "[W]here a defendant has based his actions on a medical judgment that either of two

---

[2]The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); <u>See Barren v. Harrington</u>, 152 F. 3d 1193 (9th Cir. 1998). Because plaintiff paid the filing fee, the court did not screen the original complaint. However, the court has the authority to screen the complaint notwithstanding the payment of any filing fee. 28 U.S.C. § 1915(e)(2)(B)(i); <u>see</u> <u>also</u> 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997(e)(c)(1).

alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." Jackson v. McIntosh, No. 94-16741 (9th Cir. Apr. 11, 1996), citing Estelle v. Gamble, 429 U.S. 97, 107-08 (1976). As Jackson continues, to "prevail under these principles, [a plaintiff] must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Id., citing Williams v. Vincent, 508 F.2d 541, 543-44 (2d Cir. 1974). There are no such facts alleged as to Dr. Ortiz. Dr. Ortiz should therefore be dismissed.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is granted;
2. Dr. Ortiz is DISMISSED from this action;
3. The Clerk of the Court is DIRECTED to enter judgment in favor of defendants and close this case; and
4. All pending motions are denied as moot.

IT IS SO ORDERED.

**Dated:   March 29, 2006**             /s/ Anthony W. Ishii
9h0d30                              UNITED STATES DISTRICT JUDGE